1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                   **SOUTHERN DISTRICT OF CALIFORNIA**
10

11  CITIZENS LEGAL ENFORCEMENT AND          CASE NO. 06-CV-2368 JLS (WMC)
    RESTORATION,
12                                          **ORDER: (1) GRANTING**
                                Plaintiff,  **RECLAMATION'S MOTION FOR**
13                                          **SUMMARY JUDGMENT (Doc. No.**
                                            **80) AND DENYING PLAINTIFF'S**
14          vs.                             **CROSS-MOTION (Doc. No. 83);**
                                            **(3) DISMISSING PLAINTIFF'S**
15                                          **CLAIMS AGAINST**
                                            **PVID;(4) DENYING AS MOOT**
16                                          **PVID'S MOTION FOR SUMMARY**
                                            **JUDGMENT (Doc. No. 82) AND**
17                                          **PLAINTIFF'S CROSS-MOTION**
                                            **(Doc. No. 87); (5) GRANTING IN**
18  MICHAEL L. CONNOR; KEN SALAZAR;         **PART AND DENYING IN PART**
    ROBERT W. ABBEY; ROWAN W.               **RECLAMATION'S MOTION TO**
19  GOULD; JILL JOHNSON; ED SMITH; et       **STRIKE (Doc. No. 98); AND**
    al.,                                    **(6) GRANTING IN PART AND**
20                                          **DENYING IN PART PVID'S**
                                Defendants. ***DAUBERT* MOTION (Doc. No. 95)**
21

22          Presently before the Court are cross-motions for summary judgment by all parties (Doc. Nos.

23  80, 82, 83, 87), a *Daubert* motion by Defendants Jill Johnson and Ed Smith[1] (Doc. No. 95), and a

24  motion to strike by Defendants Michael L. Connor, Ken Salazar, Robert W. Abbey, and Rowan W.

25
26
27  _____

28          [1]  Plaintiff is suing Defendants Jill Johnson and Ed Smith in their official capacities as
    President of the Board of Directors and General Manager, respectively, of Palo Verde Irrigation
    District (PVID).  (Doc. No. 1 (Compl.) ¶ 12.)  They are referred to collectively herein as PVID.

1  Gould[2] (Doc. No. 98).  Having reviewed the parties' arguments and the law, the Court **GRANTS**

2  Reclamation's[3] motion for summary judgment, **DENIES** Plaintiff's motion for summary judgment

3  against Reclamation, **DISMISSES** all claims against PVID for lack of subject matter jurisdiction, and

4  therefore **DENIES AS MOOT** the other two pending summary judgment motions.

5                                          **BACKGROUND**

6          This case concerns environmental conditions in a former part of the Colorado River channel

7  known as the Original River Channel (ORC).  Plaintiff is an organization with "the purpose of

8  preservation and restoration of natural waterways in the Palo Verde Lagoon, the Colorado River, and

9  its tributaries.  The members and participants of [sic] [Citizens Legal Enforcement and Restoration

10  (CLEAR)] . . . include a broad-based and community-wide association of non-partisan individuals,

11  businesses[,] and organizations concerned with bodies of water near and adjacent to the Lower

12  Colorado River both north and south of the town of Palo Verde, California."  (Compl. ¶ 7.)

13         The ORC used to be part of the Colorado River.  However, as part of the Cibola Cut project,

14  a new main riverbed was constructed and the ORC bypassed.  Planning on the project began around

15  1955 based on conditions that "had existed for many years."  (Doc. No. 80-1 (Reclamation's Mem.

16  ISO MSJ), at 7.)  For example, "[t]he Palo Verde Valley and the Cibola Valley . . . had long

17  experienced problems with river flow and poor drainage associated with sedimentation in the

18  Colorado River channel."  (*Id.*)  Earlier efforts to rectify these situations, such as the "pilot cut," did

19  not succeed.  (*Id.*)  Ultimately, "'to provide a safe river channel for operational purposes of the

20  Colorado River by protection of the river from possible damage that could occur from high river

21  discharges in the form of major channel changes which could tremendously increase the sediment

22

23

24  _____

25         [2]   Plaintiff is suing Defendants Michael L. Connor, Commissioner of the Bureau of
   Reclamation, Ken Salazar, Secretary of the Department of the Interior, Robert W. Abbey, Director of
26  the Bureau of Land Management, and Rowan W. Gould, Acting Director of the Fish and Wildlife
   Service, on behalf of their representative agencies.  (*See* Doc. No. 1 (Compl.) ¶¶ 8–10.)  These
27  Defendants were automatically substituted their predecessors' places pursuant to Federal Rule of Civil
   Procedure 25(d).

28         [3] Michael L. Connor, Ken Salazar, Robert W. Abbey, and Rowan W. Gould are herein referred
   to collectively herein as Reclamation.

load,'" Reclamation decided to construct the Cibola Cut.  (*Id.* at 8 (quoting A.R. US0059 [4]).) Construction began in 1967 and was completed in 1970.  (*Id.* at 5.)  Upon the Cibola Cut's completion, the ORC had only two remaining sources of water.  First, the levee separating the ORC from the new main riverbed allows through a small flow of water from the Colorado River.  Second, water flows from the Palo Verde Outfall Drain into the ORC at approximately 500 cubic feet per second.  (Doc. No. 100 (Reclamation's Opp'n), at 16.)

Plaintiff is suing two primary defendants: the Bureau of Reclamation and PVID.  Congress created Reclamation as part of "a massive program to construct and operate dams, reservoirs, and canals for the reclamation of the arid lands in 17 Western States."  *California v. United States*, 438 U.S. 645, 650 (1978).  One of Congress's supplemental acts authorized Reclamation to use funds "for the purpose of controlling the floods, improving navigation, and regulating the flow of the Colorado River."  43 U.S.C. § 617.  Reclamation was responsible for the design, planning, and construction of the major federal work at issue here—the Cibola Cut.

PVID "is an irrigation district organized in 1923 under a special act of the California legislature."  (Doc. No. 82-1 (PVID's Mem. ISO MSJ), at 3.)  That "act also authorized the governing board of PVID to manage and conduct all affairs of the district, including the purchase, construction, and maintenance of levees, dams, and other drainage works, for the purpose of promoting water conservation and use for irrigation purposes."  (*Id.*)  The district is bordered to the east and south by the Colorado River and encompasses "almost 189 square miles of territory."  (*Id.* at 4.)

One of PVID's functions is to "deliver[] Colorado River water for potable and irrigation uses to supply over 120,000 acres of irrigated farmland within the district."  (*Id.*)  This water is diverted from the Colorado River and flows through a "system of approximately 250 miles of irrigation canals and laterals."  (*Id.*)  "PVID also maintains a drainage system consisting of approximately 140 miles of natural and man-made ditches and channels designed to collect irrigation water runoff and groundwater drainage."  (*Id.*)  The main drainage channel, known as the "Outfall Drain," runs in a southerly direction "into the boundaries of the Cibola National Wildlife Refuge" and eventually

---

[4] The record in this case consists of both an Administrative Record and an Administrative Record supplement.  (Doc. Nos. 34–42 (A.R.), 58–64 (A.R. Supplement).)  The Court refers to the record, collectively, as "A.R."

converges "with the former reach of the Colorado River." (*Id.*)  From there, the water proceeds "through the [Original] River Channel for another 8.5 miles before it flows into the mainstream of the Colorado River." (*Id.* at 4–5.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 permits a court to grant summary judgment where (1) the moving party demonstrates the absence of a genuine issue of material fact and (2) entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "Material," for purposes of Rule 56, means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).  For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323.  The movant can carry his burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322–23.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. *Celotex*, 477 U.S. at 324.  The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256.  When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

**1.      Reclamation's Motion to Strike**

Reclamation moves to strike the declarations of Gary Niles, Stuart H. Hurlbert, Tom Carney,

and George P. Forni II.  (*See* Doc. No. 98-1 (Mem. ISO Mot. to Strike), at 2 n.1.)  According to Reclamation, Hurlbert, Carney and Forni's declarations were not disclosed prior to the expert witness report disclosure deadline and thus should be stricken.  (*Id.* at 2.)  It also claims that these declarations contain new opinions and information not previously disclosed.  (*Id.*)  Further, Reclamation argues that Niles's non-expert declaration is not within the permitted scope of evidence for this case.  (*Id.* at 3.)

Plaintiff argues that these declarations are merely a reiteration of the same information contained within the disclosed expert reports.  (Doc. No. 108 (Opp'n to Mot. to Strike) at 1–2.)  It also claims that Niles is necessary to, *inter alia*, establish the Plaintiff's standing to bring this suit.  (*Id.* at 3.)

Because this is an Administrative Procedures Act (APA) case, only administrative materials are proper evidence.  *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 104–05 (1977).  There is, however, an exception that allows supplementation in the case of failure to act claims.  *See S.F. Baykeeper v. Whitman*, 297 F.3d 877, 886 (9th Cir. 2002).  In this case, Magistrate Judge McCurrine allowed Plaintiff (and Defendants) to supplement the administrative record with expert reports.  (*See* Doc. Nos. 52, 55, 74.)

The parties agree that the declarations were not produced prior to the expert witness deadline.  (*See* Mem. ISO Mot. to Strike 3; Opp'n to Mot. to Strike 2.)  As such, they should be stricken as improper supplementation of the expert witness reports.  And if Plaintiff is correct that they contain no new information, there is no prejudice because all of the relevant information is contained in the expert reports.  However, because the declarations contain new information, they violate the expert witness disclosure rules.  (*Compare, e.g.*, Doc. No. 86 (Forni Decl.) *with* Forni Decl., Ex. 1 (Forni Expert Report).)  Accordingly, Reclamation's motion to strike Hurlbert, Carney and Forni's declarations is **GRANTED**.

As to Declarant Niles, the Court declines to strike his declaration.  The Court will, however, consider Niles's declaration only insofar as it pertains to the issue of standing.  No other valid basis has been offered for his testimony.  As to Plaintiff's claim that Niles's declaration provides

1    "background," such testimony is not allowed on APA claims under evidence supplementation rules.

2    *See Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996).  Nor

3    does Plaintiff's citation to *Sierra Club v. United States Department of Transportation*, 520 F. Supp.

4    460 (N.D. Cal. 1988), change this conclusion.  *Sierra Club* relies on *Asarco, Inc. v. E.P.A.*, 616 F.2d

5    1153 (9th Cir. 1980), which in turn relies on *Bunker Hill Co. v. E.P.A.*, 572 F.2d 1286 (9th Cir. 1977).

6    And as *Bunker Hill* makes clear, the relevant extra-record evidence must relate to "complex technical

7    testimony."  *Id.* at 1292.  Because Declarant Niles involves offers no explanation of this type of

8    testimony, the Court will only consider his declaration for purposes of standing.

9    **2.    PVID's *Daubert* Motion**

10    Next, PVID moves under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993),

11    to exclude the testimony of George P. Forni, II.  (Doc. No. 95 (*Daubert* Mot.), at 2–3.)  It makes two

12    arguments to this end.  Second, but addressed first here, PVID claims that three statements in Mr.

13    Forni's expert report contain improper legal opinion.  (*Id.* at 3–4.)  These statements involve PVID's

14    responsibility for maintenance of the ORC.  (*Id.*)  Plaintiff agrees that these statements are not proper

15    expert testimony.  (Doc. No. 106 (Pl.'s Reply ISO PVID MSJ), at 9.)  Therefore, the Court **STRIKES**

16    these statements.

17    PVID's more significant argument is that Mr. Forni does not have sufficient training and

18    expertise in the field within that his opinion falls to offer expert testimony.  PVID points to his lack

19    of a college degree or any training in "engineering, hydrology, or other fields of study that would

20    qualify him as an expert as to why the [Original] River Channel is in its current condition."  (*Daubert*

21    Mot. 2.)  Plaintiff responds that Mr. Forni is indeed qualified based on his practical experience.  (Pl.'s

22    Reply ISO PVID MSJ 9.)  It points to Mr. Forni's "daily management of aquatic construction and

23    remediation projects, dredging operations, mechanical aquatic vegetation abatement, lake and water

24    feature construction and renovation, . . . design and consulting for municipalities and private

25    agencies," and his authorship of "numerous reports, articles, abstracts[,] and case studies related to

26    waterway design, construction[,] and management and vegetation control."  (*Id.*)

27    Given that PVID does not challenge Mr. Forni's experience, his testimony is not properly

28    excluded.  Federal Rule of Evidence 702 allows experts to testify based on, *inter alia*, their

knowledge, skill, or experience.  Fed. R. Evid. 702.  In this case, Mr. Forni appears to have relevant

experience from which he may testify.  Thus, PVID's *Daubert* motion is **GRANTED IN PART** and

**DENIED IN PART**.

### 3.       Plaintiff's Claims Against Reclamation

### A.       *Legal Standard*

Plaintiff brings all of its claims against Reclamation pursuant to the APA.  Under the APA, "A

person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency

action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.

> This provision contains two separate requirements.  First, the person claiming a right
> to sue must identify some "agency action" that affects him in the specified fashion; it
> is judicial review "thereof" to which he is entitled.  The meaning of "agency action"
> for purposes of § 702 is set forth in 5 U.S.C. § 551(13), . . . which defines the term as
> "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent
> or denial thereof, or failure to act," 5 U.S.C. § 551(13).  When, as here, review is
> sought not pursuant to specific authorization in the substantive statute, but only under
> the general review provisions of the APA, the "agency action" in question must be
> "final agency action."

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990).  "Second, the party seeking review under

§ 702 must show that he has 'suffer[ed] legal wrong' because of the challenged agency action, or is

'adversely affected or aggrieved' by that action 'within the meaning of a relevant statute.'"[5] *Id.* at 883.

"The APA provides relief for a failure to act in § 706(1): 'The reviewing court shall . . . compel

agency action unlawfully withheld or unreasonably delayed.'"  *Norton v. S. Utah Wilderness Alliance*,

542 U.S. 55, 62 (2004) [hereinafter *SUWA*].  "'[F]ailure to act,' is . . . properly understood as a failure

to take an agency action—that is, a failure to take one of the agency actions (including their

equivalents) earlier defined in § 551(13)."  *Id.*  "The important point is that a 'failure to act' is

properly understood to be limited, as are the other items in § 551(13), to a discrete action."  *Id.* at 63.

"A second point central to the analysis . . . is that the only agency action that can be compelled under

the APA is action legally required."  *Id.*  "The limitation to required agency action rules out judicial

direction of even discrete agency action that is not demanded by law."  *Id.* at 65.

//

---

[5] The Court does not address the APA analysis's "legal wrong" prong because neither party
raised it.

1   **B.      *Violation of Section 10 of the Federal Rivers and Harbors Act***

2           Plaintiff's first cause of action alleges a violation of section 10 of the Rivers and Harbors Act

3   of 1899 (RHA), 33 U.S.C. § 403.  (Compl. ¶¶ 46–50.)  This provision prohibits the "creation of any

4   obstruction not affirmatively authorized by Congress[] to the navigable capacity of any of the waters

5   of the United States" without prior "recommend[tion] by the Chief of Engineers and authoriz[ation]

6   by the Secretary of the Army."  33 U.S.C. § 403.  "The purpose of Section 10 is to prevent obstruction

7   of the navigable capacity of the United States' waterways."  *United States v. Boyden*, 696 F.2d 685,

8   687 (9th Cir. 1983) (citing *Wisconsin v. Illinois*, 278 U.S. 367 (1929)).

9           Plaintiff alleges "that the original Cibola Cut plan . . . was not reviewed or authorized by the

10  Chief of Engineers or Secretary of War (pursuant to the federal Rivers and Harbors Act) or any

11  predecessor or successor agency."  (Compl. ¶ 48.)  It also claims that Reclamation "never obtained

12  any permit or has been granted any authority . . . [for] the original damming, changing of course, and

13  planned operation and management of the Cibola Cut and diversion of water from the [ORC]."  (*Id.*)

14  Plaintiff also asserts that these projects caused the condition in the [ORC] to become "silted, stagnant,

15  contaminated, [and] overgrown and choked with invasive weeds."  (*Id.* ¶ 49.)

16          Plaintiff's allegations here are quite similar to its initial allegations in the companion case,

17  *Citizens Legal Enforcement and Restoration v. Kempthorne*, Case No. 06-CV-2545 JLS (WMC)

18  [hereinafter *CLEAR I*].  There, Plaintiff initially advanced a claim similar to its first cause of action

19  in this case.  Specifically, it alleged that Reclamation failed to obtain a permit to create the Simpson

20  Cut and Outfall Drain.[6]  (*See CLEAR I*, Doc. No. 1 ¶¶ 42–48.)  Judgment was awarded on the

21  pleadings to Reclamation on this claim on two bases.[7]  (*Id.*, Doc. No. 29 (*CLEAR I* MJP Order), at

22  5–10.)

23          First, the Court discussed whether the failure to obtain a permit constituted "agency action"

24  under the APA.  (*CLEAR I* MJP Order 5–8.)  The Court observed:

25  ───────────────────

26      [6] The Simpson Cut was a project carried out within the PVID in the 1960s in order to improve
    drainage.  (*CLEAR I*, Doc. No. 75 (*CLEAR I* MSJ Order), at 2.)  This Court held that "Reclamation

27  does not have authority or control over any of the waters identified in the complaint," including,
    Simpson Cut and the Outfall Drain.  (*Id.* at 9.)

28      [7] At the time of the Order granting Reclamation partial judgment on the pleadings, the
    Honorable Marilyn L. Huff presided over the case.

> [T]he APA provides only a limited waiver of the United States' sovereign immunity "in suits seeking judicial review of a federal agency action under § 1331." The APA only authorizes judicial review of "agency action" as defined by the statute. [5 U.S.C. §§ 702, 704, 706(1)–(2).] Accordingly, absent "agency action" within the meaning of the APA, the action is not reviewable.

(*Id.* at 6–7 (citations omitted).) The Court recognized that this is true even where the APA challenge seeks to "'compel agency action unlawfully withheld or unreasonably delayed.'" (*Id.* at 7 (quoting 5 U.S.C. § 706(1).) That is, "'failure to act' constitutes agency action that can be challenged under § 706(1) only if the required action constitutes a rule, order, license, sanction, relief or the equivalents thereof, as defined by the APA." (*Id.* at 7–8.)

Applying that principle to Plaintiff's claims, the Court found that:

> [T]hey only allege a failure to obtain a permit from another agency. Even assuming that Federal Defendants were required to obtain permits before taking action, the obligation to obtain a permit from another agency is not the same as an agency's failure to promulgate a rule, issue an order, grant or deny a license or other relief, or impose or refuse to impose a sanction as required by a statute. In short, *failure to obtain a permit from another agency is not the equivalent of the requirement to issue a permit.*

(*Id.* at 8 (emphasis added).) The Court further found that the alleged failure to obtain a permit was "not similar to the types of agency action that courts typically address under § 706(1)." (*Id.* (citing *Interstate Natural Gas Ass'n v. Fed. Energy Regulatory Comm'n*, 285 F.3d 18, 57–58 (D.C. Cir. 2002); *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1193 (10th Cir. 1999); *Yu v. Brown*, 36 F. Supp. 2d 922, 931-32 (D.N.M. 1999)).) Thus, the Court held that the alleged failure to obtain a permit could not be challenged under the APA because it did not constitute agency action. (*CLEAR I* MJP Order 8.)

Second, the Court held that even if the alleged failure to obtain a permit was agency action, Plaintiff's claims should still be dismissed as time barred. (*Id.* at 8–10.) Noting the APA's six year statute of limitations, the Court found that "Plaintiff . . . ha[d] failed to allege that its . . . claim under the APA [was] timely." (*Id.* at 10.) "The alleged failure to obtain a permit and beginning of construction occurred in 1960, significantly more than six years prior to commencement of Plaintiff's suit. Thus, absent some allegations legally sufficient to toll the running of the statute of limitations, Plaintiff's procedural challenge [was] time barred." (*Id.*) Moreover, Plaintiff did not allege that its claim related to the adverse application of a decision to it or that these actions "were in contravention

1    of statutory or constitutional authority." (*Id.*)  As such, the Court found the claim time barred.

2           Although the Court granted Plaintiff leave to amend, the ultimate amendment of the complaint

3    omitted this claim.[8]  (*See CLEAR I*, Doc. No. 46.)

4           Both of these conclusions apply with equal force to the present case.  First, the Court finds that

5    Plaintiff has not stated a cognizable failure to act claim.  As the Supreme Court stated in *SUWA*, and

6    this Court recognized in *CLEAR I*, a "failure to act" claim is not cognizable unless it asserts the

7    "failure to take one of the agency actions (including their equivalents) . . . defined in § 551(13),"

8    *SUWA*, 542 U.S. at 62, and that action must be "a *discrete* agency action that it is *required to take*,"

9    *id.* at 64 (emphasis in original).  (*Accord CLEAR I* MJP Order 6–7.)  Thus, assuming that Reclamation

10   failed to obtain a RHA permit, the Court must determine whether that is the type of agency action

11   remediable under a "failure to act" claim.

12          Obtaining a RHA permit is not one of the types of agency action remediable under the APA.

13   Obtaining a permit from another federal agency is not like a rule, an order, a license, a sanction, or

14   relief.  *See* 5 U.S.C. § 551(4), (6), (8), (10), (11).  By obtaining a permit, a federal agency does not

15   thereby set law or policy, or apply agency rules to a particular case.  Similarly, one agency obtaining

16   a permit from another agency is not akin to the first agency issuing a license.  Nor is it similar to

17   sanctioning or providing relief to a party.  As such, Plaintiff's RHA challenge simply is not cognizable

18   as an APA failure to act claim.

19          Second, the Court finds that Plaintiff's first cause of action is barred by the statute of

20   limitations regardless of whether obtaining the permit constitutes agency action.  As both  parties

21   agree, the statute of limitations for an APA claim is six years.  28 U.S.C. § 2401(a); *Hells Canyon*

22   *Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 931 (9th Cir. 2010); Reclamation's Mem. ISO MSJ

23   13; Doc. No. 99 (Opp'n to Reclamation's MSJ), at 20.  And in this case, the relevant event that would

24   have potentially required a RHA permit—the event challenged in Plaintiff's complaint—was the

25   original construction of the Cibola Cut.  That is the only act identified that could possibly have

26

27          [8] Procedurally, Plaintiff filed a first amended complaint that still contained the allegation that
     Defendant Reclamation violated section 10 of the Rivers and Harbors Act.  (*See CLEAR I*, Doc. No.
     30 ¶¶ 42–52.)  This complaint, however, was stricken in part and dismissed in part in light of various
28   defects.  (*Id.*, Doc. No. 36.)  When Plaintiff filed its second amended complaint, the claim was
     abandoned.  (*Id.*, Doc. No. 46.)

1   "creat[ed an] . . . obstruction . . . to the navigable capacity of any of the waters of the United States."

2   33 U.S.C. § 403.  Reclamation began work on the Cibola Cut in 1966 and finished in 1970.  The

3   statute of limitations therefore expired in 1976, at the latest.[9]  Given the thirty-year time lapse prior

4   to the filing of this action, it is clearly time barred.

5          Plaintiff's arguments to the contrary are unpersuasive.  Plaintiff claims that although it might

6   appear from the complaint that this claim deals with a permit for the initial construction of the Cibola

7   Cut, "the RHA claim only arose and became necessary upon the agencies' recent decision to ignore

8   and abandon navigational ability and navigational rights—something the original project <u>never</u>

9   contemplated."  (Opp'n to Reclamation's MSJ  19 (emphasis in original); *see also id.* at 20 ("The

10  RHA violation here is the obstruction of the navigable waterway, caused by [Reclamation's] failure

11  to properly *maintain* the Cibola Cut." (emphasis in original)).)  Instead, Plaintiff believes that this is

12  a "substantive challenge . . . brought against an agency decision, as adversely applied against a

13  plaintiff."  (*Id.* at 20 (citing *Wind River Mining v. United States*, 946 F.2d 710, 715–16 (9th Cir.

14  1991).)

15         For several reasons, this argument lacks merit.  First, the allegations in Plaintiff's complaint

16  quite clearly regard the original Cibola Cut construction and design.  (*See* Compl. ¶¶ 48–50.)

17  Nowhere does the complaint suggest that a permit was required for any action after the initial

18  construction or that the RHA violation has anything to do with the maintenance of the Cibola Cut.

19  Further, it neither states or nor implies that this failure to obtain a permit challenge was specifically

20  "applied" to Plaintiff.  At this *very* late stage of the litigation, Plaintiff may not now alter its

21  allegations in an opposition brief on summary judgment.  *See Coleman v. Quaker Oats Co.*, 232 F.3d

22  1271, 1292 (9th Cir. 2000) ("[A] new theory of liability at the summary judgment stage would

23  prejudice the defendant who faces different burdens and defenses under this second theory of

24  liability." (citing *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632 (3rd Cir. 1993)); *Jimmie's

25  Limousine Serv., Inc. v. City of Oakland*, 2005 WL 2000947, at *5–*6 (N.D. Cal. 2005).  For this

26  reason alone, Plaintiff's "as applied" theory must be discarded.

27

28          [9]  In so noting, the Court does not find that this claim expired in 1976, but merely notes that year as the last possible date for the running of the limitations period.

However, this theory would fail even if the Court were to reach its merits.

> If a person wishes to challenge a mere procedural violation in the adoption of a regulation or other agency action, the challenge must be brought within six years of the decision. Similarly, if the person wishes to bring a policy-based facial challenge to the government's decision, that too must be brought within six years of the decision.

*Wind River*, 946 F.2d at 715. "If, however, a challenger contests the substance of an agency decision as exceeding constitutional or statutory authority, the challenger may do so later than six years following the decision by filing a complaint for review of the adverse application of the decision to the particular challenger." *Id.*

Plaintiff contends that its challenge to Reclamation's alleged failure to obtain a permit falls in the latter category. (Opp'n to Reclamation's MSJ 21–22.)  The Court will assume for the sake of this analysis that the construction of the Cibola Cut was in excess of Reclamation's statutory authority. Thus, the question is whether Reclamation "adverse[ly] appli[ed]" the failure to obtain a RHA permit to the Plaintiff. *Wind River*, 946 F.2d at 715. This question implies its own answer; obviously there can be no decision that adversely applies a failure to act.

Plaintiff compares this case to the situation in *Wind River* (Opp'n to Reclamation's MSJ 21–22), but the two situations are nothing alike. In *Wind River*, the plaintiffs challenged the Bureau of Land Management's (BLM) designation of a particular area as a Wilderness Study Area. *Id.* at 711. They challenged the decision because they sought to mine in that particular area. *Id.* The Ninth Circuit found that the statute of limitations began to run when the BLM unfavorably adjudicated the plaintiffs' administrative proceeding. *Id.* at 716.

*Wind River*'s inapplicability is manifest. In *Wind River*, the plaintiff was challenging two forms of affirmative agency action. *Wind River*, 946 F.2d at 712. In this case, Plaintiff is asserting a failure to act theory. (Doc. No. 83-1 (Pl.'s Mem. ISO Reclamation MSJ), at 10.)  As such this case falls outside of the *Wind River* exception. Plaintiff is not "contest[ing] the substance of an agency *decision* as exceeding constitutional or statutory authority," but is instead challenging a failure to act. *Id.* at 715 (emphasis added). And Reclamation never "adverse[ly] appli[ed] . . . the decision to" Plaintiff because there was no decision to apply. *Id.*

But even if the original failure to obtain a permit were a "decision" under *Wind River*, Plaintiff has not pointed to any evidence of a decision against Plaintiff and related to the failure to obtain a

RHA permit.  Reclamation's letter, to which Plaintiff points, is not such a decision.  (Opp'n to Reclamation's MSJ 22 (citing A.R. US0728).)  It has nothing to do with whether a RHA permit was obtained, nor does it "apply" any agency decision to Plaintiff, much less one even tangentially related to the RHA.  (*See* A.R. US0728.)  Instead it simply states that Reclamation is "concerned about the water quality in this vicinity" and has "already begun looking into the matter." (*Id.*)  Reclamation also states its planned path based on that concern.  (*Id.*)  The only negative statement in the letter is that Reclamation "is not responsible to maintain the Palo Verde Outfall Channel and water quality issues identified." (*Id.*)  This statement, however, is not an agency decision by Reclamation that could be challenged under section 702 of the APA.  As such it does not change the Court's conclusion that Plaintiff's first cause of action is not an as applied challenge.

Plaintiff also argues that it should be entitled to equitable tolling.  (Opp'n to Reclamation's MSJ 23–24.)  It claims that:

> CLEAR is not a late comer looking to arbitrarily challenge a 1960 agency decision that it could have known or would have challenged at that time.  As soon as CLEAR and its members became aware that the Cibola Cut project, as constructed, managed and maintained by [Reclamation] was adversely affecting their local waters, they diligently attempted to work with [Reclamation] to remedy the situation.  Once CLEAR had notice that [Reclamation] felt it was no longer liable for the current condition of its project and would do nothing to rectify it, CLEAR's claims were filed in a timely manner.

(*Id.* at 24 (citations and footnotes omitted).)

Reclamation argues that "Plaintiff's claims cannot be equitably tolled."  (Doc. No. 102 (Reclamation's Reply), at 8.)  For example, "Plaintiff . . . fails to cite any authority for the proposition that its 'recent' discovery (going back to 1993) of the alleged violations is sufficient to toll a limitations period that ran nearly 40 years ago." (*Id.* (citation omitted).)  Further, Reclamation argues that Plaintiff has not proven facts that would entitle Plaintiff to equitable tolling.[10]  (*Id.*)

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (citing *Irwin v. Dep't of Veterans Affairs*,

---

[10]  Reclamation also argues that Plaintiff's equitable tolling request is foreclosed by *Wind River*. (Reclamation's Reply 8.)  *Wind River* did not address the question of whether the statute of limitations could be equitably tolled for purposes of a procedural (or any other) violation. *Wind River*, 946 F.2d at 715.  Thus, it is not clear how *Wind River* is particularly relevant to the tolling question.

498 U.S. 89, 96 (1990)); *see also Irwin*, 498 U.S. at 96 ("We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.  We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." (citation and footnotes omitted)); *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1193 (9th Cir. 2001) ("We will apply equitable tolling in situations where, despite all due diligence, the party invoking equitable tolling is unable to obtain vital information bearing on the existence of the claim." (citation and internal quotation marks omitted)).)  That said, "[e]quitable tolling . . . is only applied 'sparingly' and the court is 'much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.'" *Long v. Paulson*, 349 Fed. App'x 145, 146 (9th Cir. 2009) (quoting *Irwin*, 498 U.S. at 96).

Plaintiff only offers Gary Niles's declaration to prove its alleged entitlement to equitable tolling.  (*See* Opp'n to Reclamation's MSJ 24.)  Mr. Niles, however, does not offer any evidence that Plaintiff was actively pursuing Reclamation's alleged lack of a RHA permit since the original completion of the Cibola Cut.  Nor has Plaintiff provided the Court with any evidence that an extraordinary circumstance prevented it from making this claim in a more timely fashion.  The RHA claim is, in the words of *Irwin*, a "late filing[] where the claimant failed to exercise due diligence in preserving his legal rights." 498 U.S. at 96.  Plaintiff has not offered any evidence that it could not have known about the lack of a RHA permit at the time of the Cibola Cut's construction.  Given the absence of evidence indicating a credible entitlement to equitable tolling of this claim, the Court will enforce the statute of limitations.[11]

Accordingly, the Court **GRANTS** Reclamation's motion for summary judgment on Plaintiff's

_____

[11]  Reclamation also asserts that "the Supreme Court's recent decision in *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008), casts doubt on whether equitable tolling even applies to the six year limitations period in 28 U.S.C. § 2401(a)." (Reclamation's Reply 8.)  Plaintiff disagrees, citing the Ninth Circuit's decision in *Cedars Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 770 (9th Cir. 1997), for the proposition that the statute of limitations in section 2401(a) is not jurisdictional. (Opp'n to Reclamation's MSJ 23–24.)  Although Plaintiff offers a persuasive argument that *John R. Sand & Gravel Co.* requires a finding that 28 U.S.C. § 2401(a) presents a jurisdictional barrier and implicitly overrules *Cedars Sinai*, the Court declines to so hold because Plaintiff is not entitled to equitable tolling on these facts.

first cause of action.  Plaintiff's motion for summary judgment against Reclamation on this cause of action is **DENIED**.

### C.      Violations of Section 8 of the Federal Rivers and Harbors Act

Plaintiff's second, third, and fourth causes of action allege that Reclamation violated section 8 of the Federal Reclamation Act, 43 U.S.C. § 383.[12]  (Compl. ¶¶ 51–55.)  Section 8 provides:

> Nothing in this Act shall be construed as affecting or intended to affect or to in any way interfere with the laws of any State or Territory relating to the control, appropriation, use, or distribution of water used in irrigation, or any vested right acquired thereunder, and the Secretary of the Interior, in carrying out the provisions of this Act, shall proceed in conformity with such laws, and nothing herein shall in any way affect any right of any State or of the Federal Government or of any landowner, appropriator, or user of water in, to, or from any interstate stream or the waters thereof.

43 U.S.C. § 383.  With respect to failure to act claims under section 706(1) of the APA, this Court interpreted this provision as follows in *CLEAR I*:

> [Section 8 of the Federal Reclamation Act] can be credibly read as imposing non-discretionary duties when two conditions are satisfied.  First, the duty only arises when "carrying out the provisions of" the Act; that is, taking affirmative actions authorized by statute.  Second, the duty only relates to a particular set of state laws, those "relating to the control, appropriation, use, or distribution of water used in irrigation, or any vested rights acquired thereunder."

(*CLEAR I* MSJ Order 6–7.)  The Supreme Court has given the passage the same reading.  *See Ivanhoe Irrigation Dist. v. McCracken*, 357 U.S. 275, 291 (1958) ("As we read § 8, it merely requires the United States to comply with state law when, in the construction and operation of a reclamation project, it becomes necessary for it to acquire water rights or vested interests therein.").

According to Plaintiff, Reclamation has "a mandatory and continuing obligation to comply with Section 8 of the Federal Reclamation Act," specifically certain provisions of state law.  (Compl. ¶ 52.)  It identifies three such laws: California Fish and Game Code section 5937, article X, section 2 of the California Constitution, and California's public trust doctrine.  (*Id.* ¶ 53.)  Plaintiff argues that Reclamation violated these laws by "disregard[ing] . . . California's important constitutional and statutory safeguards" and failing "to consider and protect beneficial and ecological uses in its waterways."  (Opp'n to Reclamation's MSJ 23; *see also* Pl.'s Mem. ISO Reclamation MSJ 13, 15–16,

---

[12]  The third and fourth causes of action are set out as direct violations of California law, but Plaintiff's complaint makes clear that these provisions are only applicable to Reclamation under Section 8 of the Federal Reclamation Act.  (*See* Compl. ¶¶ 61, 68.)

18–20.)  Because the Reclamation Act does not provide a private right of action, Plaintiff brings this claim under section 706(1) of the APA.[13]

*(1)   Statute of Limitations*

Reclamation argues that the APA's six-year statute of limitations bars all of Plaintiff's section 8 claims.  (Reclamation's Mem. ISO MSJ 17–18.)  Reclamation reasons that the "general allegations [in the complaint claim] that Reclamation failed to comply with applicable law when it constructed the Cibola Cut between 1966 and 1970."  (*Id.* at 17.)  Because this type of allegation "accrues when the underlying decision or action is made," these claims expired long before this case was initiated.  (*Id.*)  As to Plaintiff's "continuing violations" and "failure to act" allegations, Reclamation argues that "[t]hese counts rely upon the prohibition in Section 8 against agency *action* which would interfere with certain state water laws."  (*Id.* (emphasis in original).)  Thus, Plaintiff's claim is really about "the way in which Reclamation has *acted*, rather than any failure to act."  (*Id.* at 18 (emphasis in original).)

Plaintiff, on the other hand, argues that its "claims are in no way aimed at the construction and approval process of the Cibola Cut project."  (Opp'n to Reclamation's MSJ 23.)  Reclamation, according to Plaintiff, "fails to acknowledge [its] subsequent actions and conduct which have directly led to these claims."  (*Id.* at 22.)  Specifically, its "recent denial of responsibility and refusal to make the modifications necessary to the operations of Cibola Cut and ORC project" create the violation of section 5937.[14]  (*Id.*)  Plaintiff also suggests that Reclamation is effectively arguing "that because the project was planned and constructed in the 1960s, it was only required to follow California beneficial use laws for the subsequent six years."  (*Id.* at 23 (citing Reclamation's Mem. ISO MSJ 17–19).)

To an extent, Plaintiff is correct.  Plaintiff is, at present, framing its claims as involving failure to act by Reclamation.  Although all of these claims might originate with Reclamation's construction

---

[13]   The complaint lists both sections 706(1) and 706(2) as bases of liability in this case.  (Compl. ¶¶ 55, 61, 68.)  However, Plaintiff's opposition focuses solely on section 706(1) and omits section 706(2).  Plaintiff has therefore waived its 706(2) claims.  *See Seattle School Dist., No. 1 v. B.S.*, 82 F.3d 1493, 1502 (9th Cir. 1996) (holding that claim is waived if proponent "presents no explanation in support of its contention").

[14]   Presumably, Plaintiff believes the same "denial of responsibility and refusal to make . . . modifications" give rise to the violations of article X, section 2 of the California Constitution and the public trust doctrine.  However, Plaintiff does not address these provisions in its statute of limitations response.

of the Cibola Cut, Plaintiff is alleging a present and unperformed duty to mitigate certain environmental issues in the ORC.  Because these claims involve an alleged ongoing duty to act, they are not barred under the statute of limitations.

However, Plaintiff's complaint clearly alleges that the environmental problems at issue were "proximately caused by [Reclamation's] original damming, changing of course, or operation and management of the Colorado River."  (Compl. ¶ 54; *see also id.* ¶¶ 59, 66.)  And to the extent that Plaintiff continues to press these claims, there is no question that they are outside of the limitations period.  Further, as discussed above, Plaintiff cites no decisional authority that would allow the Court to find that this case fits within the *Wind River* exception to the limitations period for claims directly challenging the Cibola Cut's original construction.

Plaintiff again raises the issue of equitable tolling.  (Opp'n to Reclamation's MSJ 23–24.)  However, Plaintiff has not established its entitlement to tolling on these claims either.  It raises the same arguments rejected *supra* on this question. (*See id.*)  That is, Plaintiff claims that acted promptly and diligently, and sued as soon as Reclamation disclaimed responsibility for the ORC's condition.  (*Id.* at 24.)

In support of its argument, Plaintiff again cites Gary Niles's declaration.  (*See* Opp'n to Reclamation's MSJ 24.)  Mr. Niles documents his interactions with various Reclamation employees and Congressman Duncan Hunter, beginning in July 1995 and continuing through October 2004.  (*See* Niles Decl. ¶¶ 15–28.)  According to Mr. Niles, he felt that Reclamation had entirely abdicated its responsibility for the ORC's condition at some point in late 2004.  (*Id.* ¶ 29.)  He subsequently organized Plaintiff and retained counsel in April 2006.  (*Id.*)  This case was filed on October 25, 2006.  (Compl.)

Again, the Court does not agree that Mr. Niles's declaration establishes the elements required for equitable tolling of claims regarding the original construction of the Cibola Cut.  There is no indication that Plaintiff could not have discovered any of the alleged deficiencies in the initial construction of the Cibola Cut within six years of its construction.  Nor does Mr. Niles indicate that Reclamation did anything to hide alleged defects.  Nor is there any evidence of an extraordinary circumstance that would have precluded Plaintiff from bringing its claims earlier.  Indeed, there is no

explanation at all for why no one voiced concerns until 1993.  Although Plaintiff claims not to be "a late comer looking to arbitrarily challenge a 1960 agency decision," it is difficult to see the second, third, and fourth claims, to the extent that they are directed at the original design and construction of the Cibola Cut, otherwise.  (Opp'n to Reclamation's MSJ 24.)

Finally, Plaintiff argues that these claims involve "continuing violations under California" law.  (Pl.'s Mem. ISO Reclamation MSJ 5.)  "Under the continuing violations doctrine, application of the statute of limitations is barred [sic] when claimant [sic] can show a pattern or policy of violations starting before the limitations period and continuing into it."  (*Id.* at 5–6 (citing, *inter alia*, *Green v. L.A. Cnty. Superintendent of Sch.*, 883 F.2d 1472, 1489 (9th Cir. 1989)).)  However, this argument is foreclosed by a recent Ninth Circuit decision.  In *Hall v. Regional Transp. Comm'n of S. Nev.*, 362 Fed. App'x 694 (9th Cir. 2010) (unpublished), the court held that "the 'continuing violations' doctrine 'is not applicable in the context of an APA claim for judicial review.'"  *Id.* at 695 (quoting *Gros Ventre Tribe v. United States*, 344 F. Supp. 2d 1221, 1229 n.3 (D. Mont. 2004)).  Thus, the Court must reject Plaintiff's invocation of the continuing violations theory.

Accordingly, the Court finds that Plaintiff's second, third, and fourth claims are time barred to the extent that they challenge the original planning and construction of the Cibola Cut.  However, to the extent that these claims allege more recent duties and Reclamation's failure to act, Plaintiff's claims are not time barred.[15]

*(2)*     *Whether Article X, Section 2 of the California Constitution and the Public Trust Doctrine Set Forth Discrete Mandatory Agency Action Sufficient to Allow Review Under the APA*

Reclamation next argues that Plaintiff's third and fourth causes of action do not allege any failure to undertake discrete mandatory agency action.  (Reclamation's Mem. ISO MSJ 22–23.)  Reclamation argues that article X, section 2 of the California Constitution and the public trust doctrine, "even if applicable, would undoubtedly leave Reclamation []with ['] a great deal of discretion in deciding how'" they might be achieved.  (*Id.* (quoting *SUWA*, 542 U.S. at 66).)  Reclamation believes that the third and fourth causes of action fall within *SUWA*'s holding that general statutory

---

[15] As above, the Court need not address whether the statute of limitations is jurisdictional.  *See supra* note 11.

1   directives that allow for substantial agency discretion do not call for discrete agency action and

2   therefore are not enforceable under the APA.  (*Id.* at 23.)  It also argues that these laws "are just as

3   amorphous as" the examples mentioned in *SUWA*.  *See SUWA*, 542 U.S. at 67; Reclamation's Mem.

4   ISO MSJ 23.

5        Plaintiff, on the other hand, argues that its state law claims involve directives much more

6   specific than those in *SUWA*.[16]  (Opp'n to Reclamation's MSJ 15–18.)   It claims that Reclamation

7   "violated Section 8 of the Reclamation Act in failing to comply with the California Constitution" and

8   the public trust doctrine.  (*Id.* at 17.)  Specifically, Reclamation did so by "fail[ing] to implement

9   promised and necessary mitigation measures and allow sufficient inflow of quality water to support

10  wildlife, navigation[,] and other beneficial uses."  (*Id.*)   Plaintiff cites a number of cases that

11  distinguished broad programmatic attacks from more specific and discrete agency actions.  (*Id.* at 18

12  (citing, *inter alia*, *Ctr. for Biological Diversity v. Veneman*, 394 F.3d 1108, 1113–14 (9th Cir. 2005)).)

13  According to Plaintiff, Reclamation "has similarly failed to comply with specific and discrete

14  mandates that are made actionable under" section 706(1) of the APA, such as "fail[ing] to take action,

15  manage, maintain, or later correct the faulty design, construction[,] and management of the affected

16  waterways."  (*Id.*)

17       As Reclamation observes, the Supreme Court in *SUWA* limited what types of duties may be

18  enforced under the APA's failure to act provision.[17]  The Court began by holding that "a claim under

19  § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency

20  action that it is *required to take*."  *SUWA*, 542 U.S. at 64 (emphasis in original).

21       The limitation to required agency action rules out judicial direction of even discrete
     agency action that is not demanded by law (which includes, of course, agency

22   regulations that have the force of law).  Thus, when an agency is compelled by law to
     act within a certain time period, but the manner of its action is left to the agency's

23   discretion, a court can compel the agency to act, but has no power to specify what the
     action must be.

24

25

26  [16]  Plaintiff discusses all three state law claims, but because Reclamation does not argue that
    California Fish and Game Code § 5937 is inapplicable based on agency discretion, the Court does not

27  address that claim here.

28  [17]  At issue in *SUWA* was a statutory directive that "the Secretary . . . continue to manage such
    lands . . . in a manner so as not to impair the suitability of such areas for preservation as wilderness."
    542 U.S. at 59.

*Id.* at 65.  If an agency has such discretion under a general statutory directive, it would be improper to "simply enter a general order compelling compliance with [the statutory] mandate, without suggesting any particular manner of compliance" because "[g]eneral deficiencies in compliance . . . lack the specificity requisite for agency action."[18]  *Id.* at 66.  The purpose of this rule "is to protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve."  *Id.*

The particular directives at issue here are article X, section 2 of the California Constitution and the public trust doctrine.  The former, in relevant part, "requires that the water resources of the State be put to beneficial use to the fullest extent of which they are capable, and that the waste or unreasonable use or unreasonable method of use of water be prevented, and that the conservation of such waters is to be exercised with a view to the reasonable and beneficial use thereof in the interest of the people and for the public welfare."  Cal. Const. art. X, § 2.  The latter, according to the California Supreme Court, imparts an "affirmative duty" on the state "to take the public trust into account in the planning and allocation of water resources, and to protect public trust uses whenever feasible."  *Nat'l Audubon Soc'y v. Superior Court*, 33 Cal. 3d 419, 446 (1983).

Plaintiff asserts that Reclamation must abide by these provisions under section 8 of the Reclamation Act.  (*See* Pl.'s Mem. ISO Reclamation MSJ 8.)  As stated above, section 8 requires "the Secretary of the Interior, in carrying out the provisions of this Act, [to] proceed in conformity with [laws of any State or Territory relating to the control, appropriation, use, or distribution of water used in irrigation, or any vested right acquired thereunder]."  43 U.S.C. § 383.

Even assuming, *arguendo*, that Reclamation is bound under section 8 to comply with the public trust doctrine and California Constitution in the manner that Plaintiff suggests, the Court would nonetheless find that *SUWA* forbids the public trust doctrine claim.

The public trust doctrine is precisely the kind of general directive covered under *SUWA*'s holding.  It is difficult to see how the "affirmative duty" to "take the public trust into account in the

---

[18]  The Court contrasted this with the scenario where the failure to act is "the failure to issue a ruling," which is sufficiently specific to form the basis for relief.  *SUWA*, 542 U.S. at 66.

planning and allocation of water resources, and to protect public trust uses whenever feasible," *Nat'l Audubon Soc'y*, 33 Cal. 3d at 446, could be adjudged without entangling courts in "abstract policy disagreements," *SUWA*, 542 U.S. at 66. This doctrine commands only that the public trust be "take[n] . . . into account" and only requires protection of that trust when "feasible." *Audubon*, 33 Cal. 3d at 446. This leaves, in the words of *SUWA*, "the manner of . . . action . . . to the agency's discretion." *SUWA*, 542 U.S. at 65. As such, the requirement cannot be enforced under the APA, even if it applies to Reclamation here.

As to article X, section 2 of the California Constitution, the Court finds that it contains both general directives granting broad discretion and a sufficiently specific command to be enforceable. Like the public trust doctrine, the APA does not permit enforcement of the requirement that "water resources of the State be put to beneficial use to the fullest extent of which they are capable," or that "the conservation of such waters is to be exercised with a view to the reasonable and beneficial use thereof in the interest of the people and for the public welfare." Cal. Const. art. X, § 2. These provisions leave a great deal of discretion without mandating any enforceable standard. They are similar to the example set out in *SUWA* that required the Secretary of the Interior to "'manage the [Steens Mountain] Cooperative Management and Protection Area for the benefit of present and future generations.'" *SUWA*, 542 U.S. at 67. As such, the Court finds that Plaintiff's third cause of action, to the extent that it is based on these provisions, is not cognizable under the APA.

However, the remaining provision of Article X, section 2 of the California Constitution does not fall into this category. It requires that "the waste or unreasonable use or unreasonable method of use of water be prevented." Cal. Const. Art. X, § 2. Although the text of the Constitution does not explain what "waste" or "unreasonable use" means, this provision creates a mandatory duty not to do those things. This would be, to the extent that it applies to Reclamation here, a discrete and required duty under *SUWA*.

Accordingly, the Court **GRANTS** Reclamation's motion for summary judgment as to the public trust doctrine and the provisions of article X, section 2 of the California Constitution noted above because they do not set forth discrete and mandatory action sufficient to be enforceable on Reclamation under the APA. Concomitantly, Plaintiff's motion for summary judgment against

1   Reclamation on these bases is **DENIED**.  However, the Court rejects Reclamation's assertions that

2   the constitutional requirement that "the waste or unreasonable use or unreasonable method of use of

3   water be prevented" is so "amorphous" as to preclude review.

4   *(3)      Whether Section 8 Requires Reclamation to Comply with State Law in the Present Case*

5          Reclamation next argues that the statutory provisions relied upon by Plaintiff do not apply to

6   the Cibola Cut project.  (*See* Reclamation's Mem. ISO MSJ 28–34; Reclamation's Reply 5–7.)  It

7   posits that "Section 8 does not mandate discrete agency action that can be compelled under Section

8   706(1)."  (Reclamation's Reply 5 (citing *Hells Canyon*, 593 F.3d at 932).)  Reclamation offers two

9   reasons why this is so.  First, Reclamation notes that the provision's "'shall proceed in conformity

10  with' language is triggered only upon action taken by Reclamation" and "by its own terms, imposes

11  no affirmative discrete agency action that Reclamation was required and failed to take."  (*Id.*)  And

12  according to Reclamation, "the only agency action on the part of Reclamation 'in carrying out the

13  provisions' of the Reclamation Act was the construction of the Cibola Cut between 1966 and 1970."

14  (*Id.*)

15         Second, Reclamation asserts that "even if Section 8 could be construed to impose a 'duty' to

16  comply with state law, Section 8 does not mandate any particular discrete 'agency action' (rule, order,

17  license, sanction or relief) under any particular state law."  (*Id.*)  It also believes that the "'shall

18  proceed in conformity with' language of Section 8 is too broad to be construed otherwise" and is "a

19  far cry from that deemed to impose discrete agency action in *SUWA* and other failure to act cases."

20  (*Id.*)

21         Plaintiff does not directly address this argument.  Rather, it appears to miss the question that

22  Reclamation raises and that the Court discussed in its summary judgment Order in *CLEAR I*.  That is,

23  when is Reclamation obligated to follow state law pursuant to section 8 of the Reclamation Act?

24         As noted above, the Court answered this question in *CLEAR I*.  It held that there are two

25  conditions that must be simultaneously met before Reclamation is bound by state law under section

26  8:

27          First, the duty only arises when "carrying out the provisions of" the Act; that is, taking
            affirmative actions authorized by statute.  Second, the duty only relates to a particular
28          set of state laws, those "relating to the control, appropriation, use, or distribution of
            water used in irrigation, or any vested rights acquired thereunder."

- 22 -                                                                                    06cv2368

1  (*CLEAR I* MSJ Order 6; *see also Ivanhoe*, 357 U.S. at 291).

2      Here,  Plaintiff makes clear that Reclamation's only relevant *action* was the construction of

3  the Cibola Cut.  (*See, e.g.*, Compl. ¶¶ 54, 59–60, 66–67; Pl.'s Mem. ISO Reclamation MSJ 2 ("The

4  need and appropriateness of judicial relief in this case is what happens when government officials and

5  agencies commence a project, realize they have designed and built it wrong, and refuse to implement

6  an abundance of features and measures . . . .").)  Beyond that series of acts—which concluded in

7  1970—Plaintiff identifies no other affirmative actions.  Instead, Plaintiff asserts that Reclamation has

8  failed to take acts required by state law.  (*See, e.g.*, Opp'n to Reclamation's MSJ 13–18.)

9      Accordingly, there is no basis for applying these statutory provisions to Reclamation.  Section

10  8 only applies when Reclamation is "carrying out the provisions of" the Reclamation Act, and Plaintiff

11  has not identified how Reclamation is currently "carrying out" the Act's provisions.  There is no

12  evidence that Reclamation is presently *doing* anything related to the Cibola Cut.[19]  In fact,

13  Reclamation's failure to act is Plaintiff's primary complaint.

14      Moreover, this case, unlike *Natural Resources Defense Counsel v. Patterson*, 791 F. Supp.

15  1425 (E.D. Cal. 1992), involves no ongoing management or operation of a Reclamation project.  *See*

16  *also Natual Res. Def. Counsel v. Patterson*, 146 F.3d 1118 (9th Cir. 1998); *Natural Res. Def. Counsel*

17  *v. Patterson*, 333 F. Supp. 2d 906 (E.D. Cal. 2004) [hereinafter *Patterson III*].  In *Patterson*, the

18  plaintiff sued under section 8 to require Reclamation to operate the Friant Dam in compliance with

19  California Fish and Game Code § 5937.  *Id.* at 1428.  Reclamation was "carrying out the provisions

20  of" the Reclamation Act in operating the Friant Dam and therefore subject to the set of state laws

21  mentioned in section 8.[20]

22

23      [19]  As previously noted, Reclamation did act to construct the Cibola Cut, and ultimately, that
construction led to the problems that Plaintiff complains of.  That said, the Court held *supra* that
24  Plaintiff's claims are time barred to the extent that they challenge the original planning and
construction of the Cibola Cut.
25

26      [20]  Given Plaintiff's counsel's extensive reliance on *Patterson* at oral argument, the case
perhaps bears further discussion.  In that case—as Reclamation acknowledges—the district court held
27  "that Section 5937 is applicable to Reclamation through Section 8."  (Reclamation's Mem. ISO MSJ
31; *see Patterson III*, 333 F. Supp. 2d at 913–14 ("As this court has previously held . . . , § 8 of the
28  Reclamation Act of 1902 makes California Fish and Game Code § 5937 applicable to the federal
defendants . . . .").  However, the *Patterson* court did not address what this Court held was a threshold
inquiry in *CLEAR I*—whether the defendants were carrying out the provisions of the Reclamation Act

Here, Reclamation is not "operating" the Cibola Cut.  As Reclamation explains, the levees blocking the flow of the ORC "are static earthen structures of dirt fill, gravel, and rip-rap; they neither impound nor release water and are therefore not 'dams' operated as such; they have not been altered in forty years; and they are functioning as designed." (Reclamation's Reply 6.)  Given this structure, Defendant is not "carrying out the provisions of" the Reclamation Act with respect to Plaintiff's allegations. (*See CLEAR I* MSJ Order 6.)  Thus, Reclamation is not obligated to comply with the state laws upon which Plaintiff's claims are based.

Accordingly, the Court **GRANTS** Reclamation's motion for summary judgment on Plaintiff's second, third, and fourth causes of action.  Plaintiff's motion for summary judgment against Reclamation on these causes of action is **DENIED**.

### 4.     Plaintiff's Claims Against PVID

Plaintiff also asserts its third and fourth causes of action for violation of article X, section 2 of the California Constitution and violation of the public trust doctrine, respectively, against PVID. Because PVID is a California governmental entity, these claims arise directly under the relevant legal provisions, rather than the APA.

Because the Court will grant Reclamation's motion for summary judgment in its entirety, it will not retain jurisdiction over Plaintiff's claims against PVID.  All of Plaintiff's claims against PVID arise under California law, and PVID is a state governmental entity.  Diversity jurisdiction is not present here because Plaintiff and PVID are both California residents.  *See* 28 U.S.C. § 1332.  As such, the Court has no subject matter jurisdiction over the claims.  This alone counsels in favor of their dismissal.  *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

Although the Court could retain supplemental jurisdiction over Plaintiff's claims against PVID

---

such that section 8 required them to comply with state law.  In *Patterson*, there was no question that the defendants were carrying out the provisions of the Reclamation Act through their active operation of the Friant Dam.  *See Patterson III*, 333 F. Supp. 2d at 909 ("The Bureau built the Friant Dam . . . in the early 1940s . . . . Since that time, the Bureau has operated Friant Dam to maximize the quantity of water diverted to its Friant Division contractors . . . ."); *see also id.* at 917.  In contrast, in this case, Reclamation is not carrying out the provisions of the Reclamation Act because it is not operating the Cibola Cut.  Accordingly, *Patterson* is inapposite.

pursuant to 28 U.S.C. § 1367(c)(3), issues of comity make declining jurisdiction the obvious choice. A California citizen is suing a California governmental entity under California law.  California has an overwhelming interest in adjudicating Plaintiff's claims in its state courts.  Therefore, the Court declines supplemental jurisdiction and **DISMISSES** Plaintiff's claims against PVID **WITHOUT PREJUDICE**.  *See Abeel v. Summit Lending Solutions, Inc.*, 2010 WL 1445179, at *4 (S.D. Cal. Apr. 9, 2010) ("Where a district court declines to exercise supplemental jurisdiction, the state law claims should be expressly dismissed without prejudice." (citing *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999))).  PVID's and Plaintiff's cross-motions for summary judgment are therefore **DENIED AS MOOT**.

### CONCLUSION

For the reasons stated, the Court **GRANTS** Defendant Reclamation's motion for summary judgment in its entirety and **DENIES** Plaintiff's motion for summary judgment against Reclamation. Further, the Court **DISMISSES** Plaintiff's claims against PVID for lack of subject matter jurisdiction and **DENIES AS MOOT** both PVID's and Plaintiff's cross-motions for summary judgment.  This Order concludes the litigation in this matter.  The Clerk **SHALL** close the file.

**IT IS SO ORDERED.**

DATED:  January 11, 2011

_Janis L. Sammartino_
Honorable Janis L. Sammartino
United States District Judge